# In the Federal District Court
## For the District of Puerto Rico

| | |
|---|---|
| **LUZ Z. MORALES-MELECIO** on **behalf of her minor daughter Z.M.M., MARIA I. MARTINEZ-ORTIZ, EMILIO MATOS-PEREZ and MARIELA MATOS-MARTINEZ**<br>*Plaintiffs*<br><br>**Vs.**<br><br>**UNITED STATES OF AMERICA**<br>*Defendants* | **CIVIL NO. 13-1311** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs, through the undersigned counsel, and very respectfully, state, allege and pray as follow:

### I. Nature of the action

1.1   This is an action seeking compensatory damages by Plaintiffs Luz Z. Morales- Melecio, on behalf of her minor daughter Z.M.M., Maria I. Martinez-Ortiz, Emilio Matos-Perez and Mariela Matos-Martinez, on their own behalf and, the minor represented by her mother, as heir of the causes of action of her deceased father Emilio Matos-Martinez.   The acts and omissions initially occurred when Mr. Emilio Matos-Martinez attended the healthcare institution of "Salud Integral en la Montaña" (SIM), in the city of Naranjito, Puerto Rico and was treated there and negligently discharged by a physician.   As the direct

result of the combined negligent acts and omissions averred hereafter, plaintiffs' damages were caused, directly related with the patient's demise.

## II. Jurisdiction and Venue

2.1    This Court has subject matter jurisdiction over codefendant United States of America pursuant to the Federal Torts Claim Act ("FTCA") 28 U.S.C. § 1346 (b), 2671-2680, as, plaintiffs recently learned, SIM is a covered employee and entity under the Federally Supported Health Centers Assistance Act, 42 USC §2339 (c), (g)-(n) (F.S.H.C.A.A.) for the US Department of Health and Human Services.

2.2    Venue is proper pursuant to 28 U.S.C. §1391(a) as all the events and omissions giving rise to the claim occurred within the jurisdiction of Puerto Rico.

2.3    Pursuant to FTCA, 28 U.S.C. §§1346(b), 2401(b), 2671-2680, plaintiffs filed administrative claims (Standard Form 95) before the US Department of Health and Human Services on April 9, 2012.  Since then, a period in excess of six months has elapsed without the administrative claim being adjudicated, thereby allowing plaintiffs to address this court with their claims.

## III. The parties

3.1    Plaintiff Luz Z. Morales-Melecio, on behalf of her minor daughter Z.M.M., a citizen of the United States and daughter of the deceased Emilio Matos-Martinez, legal resident of the Commonwealth of Puerto Rico and the sole heir of the causes of action of her deceased father.

3.2    Plaintiffs Maria I. Martinez-Ortiz, Emilio Matos-Perez and Mariela Matos-Martinez are citizens of the United States, parents and sister, respectively of the deceased Emilio Matos-Martinez and legal residents of the Commonwealth of Puerto Rico.

3.3    United States of America/"Salud Integral en la Montaña, Inc." (SIM) is a covered employee and entity under the Federally Supported Health Centers Assistance Act, (FSHCAA) for the US Department of Health and Human Services, cognizable under the provisions of the Federal Tort Claims Act and, consequently, was responsible for patient's medical care since the onset of his health condition alleged to in this complaint.  As more particularly set forth below, the negligent acts and omissions of said defendant's agent Dr. Maria E. Roman-Bruno, caused and contributed to patient's demise and thus, to plaintiffs' damages alleged herein.

### IV. Allegations of facts common to all causes of action

4.1    At the time of his demise, as more particularly set forth below, Emilio Matos-Martinez was a morbid obese 36 year old patient, with medical history of blood hypertension.

4.2    Matos-Martinez was doing relatively well until he visited SIM on Saturday February 27, 2010 at 4:55 PM, which was his assigned primary care provider under "Reforma de Salud" of the PR government, complaining of abdominal pain and constipation of five days duration.

4.3    The triage nurse described Matos' abdominal pain as 'severe' and found his vital signs to be 'significant', as he was febrile and tachycardic.

4.4    The patient was superficially evaluated at ER by Dr. Maria E. Roman-Bruno, SIM's agent or employee, whose abdominal exam described only tympanic abdomen with increased bowel sounds.

4.5    Without describing findings at palpation or visual observation of the abdomen, nor ordering any laboratory or image studies, Dr. Roman-Bruno made a "diagnosis" of abdominal pain and discharged the patient home at 7:32 PM, with no written instructions for following up, however prescribing him a laxative, an anti-acid and an anticholinergic.

4.6    Matos continued at home with abdominal pain throughout the night and on the following morning, Sunday February the 28th, he visited the "Hospital Universitario Ramon Ruiz-Arnau's" Emergency Room (HURRA) at Bayamon, Puerto Rico, where he was triaged at 11:17 AM.

4.7    The triage nurse noted that the patient complained of abdominal and chest pain, described as acute, constant and aggravated by physical activities, also noting blood in his urine (hematuria).

4.8    Patient's vital signs showed a pulse of 138/min, BP of 136/88, respirations of 22/min and temperature of 37.5°.

4.9    Patient is then evaluated by the emergency room physician, Dr. Luis E. Mejías at 1:50 PM, who found the patient moderately dehydrated and with a distended abdomen, ordering a laboratory work-up, EKG and abdominal X-rays.

4.10   The X-rays showed air fluid levels; the white blood cell count was normal, but the neutrophils were elevated, implying a bacterial infection in evolution.

4.11   A CT-Scan was performed at 6:30 PM, revealing inflammatory changes and a possible mesenteric abscess. A consultation to the on-call surgeon was made but he refused to come and see the patient alleging that there were no surgery tables at HURRA for operating overweight people as patient.

4.12   ER physicians tried to transfer patient to other facilities, to no avail.

4.13   On the morning of March 1st, at 10:45 AM, patient was seen, by an emergency physician, writing that the patient was having respiratory distress, which he categorized as "mild".

4.14   At 10:50 AM in the same morning, the paperwork for transferring patient to 4the Puerto Rico Medical Center (PRMC), which accepted the transfer, was completed by him.

4.15   Patient was transferred to the PRMC and received there by a triage nurse around 12:00 PM, hypotense, tachicardic and with respiratory distress.

4.16   After being triaged, patient was evaluated by a Dr. Barnes, who immediately intubated and placed him on mechanical ventilation.

4.17   At 2:15 PM patient was evaluated by a surgeon but the abdominal examination was inconclusive, so he ordered an abdominal CT-Scan.  The CT-Scan revealed a pneumoperitoneum, free and contained fluid in the abdominal

cavity, compatible with a hollow viscus perforation, all of which was in accordance with lab studies that showed leukocytosis with a marked neutrophilia and a metabolic acidosis.

4.18   Shortly after the CT-Scan was performed, the patient suffered an episode of bradycardia that rapidly progressed into a flat line, which prompted 18 minutes of advanced cardiac life support (ACLS), after which he was resuscitated.

4.19   At 3:55 PM the patient developed an episode of pulse less electrical activity that did not respond to ACLS for 20 minutes and he was pronounced dead at 4:15 PM.

4.20   On March 2, 2010 an autopsy was performed.  The cause of death was stated in the autopsy report as septic shock secondary to generalized peritonitis caused by a perforated colonic diverticulum.

### V.   *Medical malpractice claim*

5.1   Matos-Martinez was evaluated at SIM on February 27th and, from the moment he stepped into the emergency department, the management and treatment by Dr. Roman-Bruno totally departed from the accepted standards of medical care, incurring in gross negligence.

5.2   The minimal work-up for a patient with high fever, abdominal pain and constipation, as the patient complained of at his arrival at SIM, is a complete blood count (CBC), urine analysis and simple abdominal X-rays, while a surgical evaluation is also mandatory, particularly in a morbidly obese patient when the body 'habitus' interferes with the physical examination.

5.3    These instances unreasonably delayed the evaluation and the appropriate treatment of patient's condition and prompted its evolution into septic shock, which eventually triggered his demise.

5.4    Had it not been by these violations of the medical standard of care, patient's sufferings and demise, as well as plaintiffs' damages, could have been avoided.

5.5    All the damages alleged herein are the direct consequence of the negligence and medical malpractice of defendant's agent or employee Dr. Maria Roman-Bruno, while acting within the scope of their agency or employment with SIM.

## VI    *Statute of Limitations*

6.1    The certified copy of the PRMC medical records was provided to plaintiffs on July 28, 2010 so, it was not until then that plaintiffs became aware of the cause of death and the possibilities of negligence as it source thus, the possible existence of their causes of action under PR law.

6.2    Not being aware of the true identity of SIM, as covered entity under the Federally Supported Health Centers Assistance Act, 42 USC §2339 (c), (g)-(n) (F.S.H.C.A.A.) for the US Department of Health and Human Services, on March 16, 2011 plaintiffs filed a medical malpractice lawsuit, seeking compensatory damages at the Puerto Rico Commonwealth Court of First Instance, Bayamon Part, Civil No. DDP2011-0220, against SIM and others, while tolling all the applicable statute of limitations.

6.3    The local lawsuit was then voluntarily dismissed by plaintiffs on June 30, 2011, after which they became aware that, although part of the "Reforma de Salud" of the PR government, SIM was also a participating covered hospital under the FTCA, which prompted the April 9, 2012 administrative claim.

### VII.    Damages

7.1    As the direct and proximate result of the negligent acts and omissions of defendant's doctor, amounting to medical malpractice, co-plaintiff minor Z.M.M. has suffered, is suffering and will continue to suffer intense and permanent moral and emotional damages for her father's loss, all of which are estimated in an amount of not less than $500,000.00.

7.2    As the direct and proximate result of the negligent acts and omissions of defendant's doctor, amounting to medical malpractice, co-plaintiff Maria I. Martinez Ortiz has suffered, is suffering and will continue to suffer intense and permanent moral and emotional damages for the loss of her son, all of which are estimated in an amount of not less than $1,000,000.00.

7.3    As the direct and proximate result of the negligent acts and omissions of defendant's doctor, amounting to medical malpractice, co-plaintiff Emilio Matos-Perez has suffered, is suffering and will continue to suffer intense permanent moral and emotional damages for the loss of his son, all of which are estimated in an amount of not less than $1,000,000.00.

6.3    As the direct and proximate result of the negligent acts and omissions of defendant's doctor, amounting to medical malpractice, allege

heretofore, co-plaintiff Mariela Matos-Martinez has suffered, is suffering and will continue to suffer intense and permanent moral and emotional damages for the loss of her only brother, all of which are estimated in an amount of not less than $1,000,000.00.

6.4    As the direct and proximate result of the negligent acts and omissions of defendants, amounting to medical malpractice, alleged heretofore, the deceased minor daughter Z.M.M. inherited his cause of action (survivors' claim) for all his physical pain and emotional sufferings since the onset of his arrival to SIM until his death several days after, all of which are estimated in the sum of no less than $500,000.00.

**WHEREFORE**, it is respectfully requested from this Honorable Court to enter judgment on plaintiffs' behalf and against defendant, granting the sums herein requested, together with such other relief as it may deem proper and necessary warranted by the proven allegations and the law.

**RESPECTFULLY SUBMITTED,**

In Caguas, Puerto Rico, this 22nd Day of April, 2013.

*S/José F. Velázquez Ortiz*
JOSE F. VELAZQUEZ ORTIZ
Counsel for plaintiffs
Velázquez Law Offices, PSC
USDC-PR 123310
PO Box 188
Caguas, Puerto Rico 00726
Tel. 787-744-9598/Fax 787-744-3482
E-mail: jfvlaw@gmail.com