IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUZ Z. MORALES-MELECIO ET AL.,

    Plaintiffs,

            v.                          Civil No. 13-1311 (SEC)

UNITED STATES OF AMERICA,

    Defendant.

**OPINION AND ORDER**

In United States v. Kubrick, the Supreme Court held that, in medical malpractice claims against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2401(b), 2671-2680 (FTCA), the statute of limitations begins to run "when the plaintiff knows both the existence and the cause of his injury." 444 U.S. 111, 113 (1979); see also Skwira v. United States, 344 F.3d 64, 73 (1st Cir. 2003). The resolution of this case requires a careful analysis of what constitutes knowledge of the cause of injury within the meaning of Kubrick.

The plaintiffs are María Martínez, Emilio Matos-Pérez, minor Z.M.M., and Mariela Matos (collectively, Plaintiffs); the parents, daughter, and sister of the late Emilio Matos-Martínez (Matos), the putative victim of this medical malpractice action. They brought a wrongful-death action seeking compensatory damages for their own suffering as a result of Matos' premature death. Z.M.M. also brought an inherited action as heir of her deceased father, for the suffering that Matos endured shortly before his death.

Pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233, the United States is liable under the FTCA for the negligent acts and omissions attributable to Salud Integral en la Montaña (SIM), a federally-funded hospital.

Pending before the Court is the United States' motion for summary judgment. For the reasons that follow, the motion is **GRANTED**. Because the Government's motion is grounded on the FTCA's statute of limitations, a chronological recount of the relevant facts, viewed in the light most favorable to Plaintiffs, sets the stage.

## I.   Factual and Procedural Background

On February 27, 2010, Matos sought medical attention for abdominal pain and constipation at SIM. After a perfunctory evaluation, which did not include laboratory or image studies, he was diagnosed with "abdominal pain," and then discharged with instructions to take certain medication.

Matos' condition worsened overnight. The next day, his sister took him to the emergency room at Hospital Universitario Ramón Ruiz-Arnaus (HURRA). There, he was diagnosed with abdominal pain, dehydration, and hematuria (blood in the urine). Medical tests revealed evidence of a bowel obstruction which prompted the emergency room physician to request surgical evaluation. See Docket # 189, p. 4. Dr. Ricardo Rosario, head of HURRA's surgery department, refused to evaluate Matos stating that there were no surgical tables at the hospital sturdy enough to handle a patient weighing as much as Matos, who tipped the scales at 330 pounds. Thus, the staff at HURRA attempted to transfer Matos to another medical facility. But it was not until the next morning, on March 1, 2010, that Matos was transferred to the Puerto Rico Medical Center. He was immediately diagnosed with septic shock and multiple organ failure. By mid-afternoon, Matos was dead. The next day, Matos' mother and co-plaintiff María Martínez authorized an autopsy.

On March 6, 2010, Matos' body was cremated. Two days later, Martínez received the cremation file, which included a copy of the death certificate stating that the cause of death was "septic shock, secondary to peritonitis, secondary to internal perforation." On May 26, 2010, she requested a certified copy of Matos' complete medical file at the Puerto Rico Medical Center, and on July 28, 2010, she received the

file, including the autopsy report. Like the death certificate, the autopsy report confirmed that Matos' cause of death was septic shock secondary to peritonitis, but added diverticulitis as a cause of the intestinal perforation.

Plaintiffs filed a medical malpractice suit in local court on March 11, 2011, against SIM, HURRA, and related physicians, but on June 20, 2011, they voluntarily dismissed it. At some point thereafter, Plaintiffs do not say exactly when, they became aware that SIM was a covered entity pursuant to the Federally Supported Health Centers Assistance Act, under which SIM and its employees are deemed to be federal employees of the Public Health Service for purposes of medical malpractice suits. 42 U.S.C. § 233(g)(1)(A). Still, it was not until April 15, 2012—over a year after they filed their original complaint in state court and nine months after they voluntarily dismissed it—that they filed their administrative claim before the U.S. Department of Health and Human Services. More than a year passed without the agency rendering a final disposition of their claims. Thus, on April 22, 2013, Plaintiffs filed this federal action.

In due course, the Government moved for summary judgment, arguing that Plaintiffs' claims are time-barred by the FTCA's two-year statute of limitations. Docket # 221. Plaintiffs counter that their claims are timely under the "discovery rule," applicable to FTCA cases when "the factual basis for the cause of action… [is] 'inherently unknowable' at the time of injury." González v. United States, 284 F.3d 281, 288-89 (1st Cir. 2002) (quoting Attallah v. United States, 955 F.2d 776, 780 (1st Cir. 1992).

## II. Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the

outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1, 2 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam). In this case, the material facts are, for the most part, undisputed.

### III. Applicable Law and Analysis

Plaintiffs' action against the United States is premised on SIM's status as a covered entity under the Federally Supported Health Centers Assistance Act. As such, their remedy for any medical malpractice attributable to SIM or its employees lies exclusively within the contours of the FTCA. See 42 U.S.C. § 233(a); Hui v. Castaneda, 559 U.S. 799, 806 (2010).

It is well settled that, as a sovereign, the United States is immune from suit without its consent. See Skwira, 344 F.3d at 72 (citing United States v. Mitchell, 445 U.S. 535, 538 (1980)). In enacting the FTCA, Congress expressly waived the United States' immunity, thereby allowing individuals to sue the Government "for or injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). But such a claim is "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." Id. § 2401. Because this statute of limitations is a condition of the United States' waiver of immunity, it "must be strictly construed." Skwira, 344 F.3d at 73 (citing Kubrick, 444 U.S. at 117–18).

At issue here is whether Plaintiffs' administrative claims were filed within the FTCA's statute of limitations. This, in turn, depends on the date when Plaintiffs' claims

"accrued" for purposes of commencing the FTCA's limitations period.[1] Importantly, "it is federal law—not state law—that is used to determine [when the statute of limitations begins in] an FTCA claim." Surén-Millán v. United States, 38 F. Supp. 3d 208, 219 (D.P.R. 2013) (citing Rakes v. United States, 442 F.3d 7, 20 n. 7 (1st Cir. 2006).

### a. The FTCA's statute of limitations and the discovery rule

As a general rule, the FTCA's statute of limitations begins to run on the date of the injury. See González, 284 F.3d at 288. This is known as the "time-of-injury rule." Skwira, 344 F.3d at 75. But the Supreme Court has recognized a "discovery rule" applicable to medical malpractice claims when "the factual basis for the cause of action… [is] 'inherently unknowable' at the time of injury." González, 284 F.3d at 288-89. Under this exception, the statute of limitations begins to run when an injured party, exercising reasonable diligence, uncovers "both the existence and the cause of his injury." Kubrick, 444 U.S. at 113.

Here, the parties agree that Plaintiffs had knowledge of their injury since the date of Matos' death. However, they disagree about the date when Plaintiffs knew, or

---

[1] The discovery rule has been perceived as a rule "governing delayed accrual" of a claim. Rakes v. United States, 442 F.3d 7, 24 (1st Cir. 2006). The reader, however, will note that this opinion is written, for the most part, in terms of the date when the statute of limitations began to run and not in terms of the date when Plaintiffs' claims accrued. The reason is that in William A. Graham Co. v. Haughey, the Third Circuit opined that many courts have often confused the discovery rule as having the effect of "delaying the accrual of a cause of action," rather than "tolling the running of the statute of limitations." 646 F.3d 138, 149 (3d Cir. 2011) (listing myriad cases where courts assume that the discovery rule pertains to accrual but do not define "precisely what it means for a cause of action to accrue; nor do they explain why accrual rather than tolling is the relevant concept"). Concluding that the discovery rule "cannot be an accrual doctrine," id. at 150, the court observed that "[a]ccrual has to do with the existence of a legally cognizable right to obtain a judicially sanctioned remedy, not the practical capacity to file a lawsuit." Id. at 147. Accrual, the Third Circuit said, "is defined in terms of the objective existence of a viable cause of action, not in terms of whether the limitations clock has started." Id. at 149. Although "the limitations period generally commences once a claim exists," "a running clock is not the sine qua non of accrual." Id. In this particular case, the distinction between characterizing the discovery rule as delaying the accrual of an action rather than tolling the statute of limitations is immaterial. The Court's choice of words is meant to avoid any potential confusion.

should have reasonably known, the cause of his injury so as to trigger the limitations period.[2]

Plaintiffs posit that that the limitations clock did not start until July 28, 2010, when the Puerto Rico Medical Center produced Matos' complete medical file including the autopsy report. In support of this argument, they proffered an affidavit by their expert witness, Dr. Manuel Pérez that reads as follows:

> By merely reading the [] death certificate, no potential claimant, nor even a physician, would have suspected the real cause of [Mr. Matos'] demise, including if negligence was a factor that contributed or cause it. An intestinal perforation can be the result, among others, of appendicitis, ischemic or traumatic necrosis [or]…perforated diverticula, as in Mr. Matos' case.
>
> Taking this death certificate only, besides the happening of Mr. Matos' demise written as the result of septic shock, secondary to peritonitis, secondary to intestinal perforation, no physician can reasonably realize, less a lay person, that a negligent act has been committed, not even its true cause. In other words, no one can infer the actual or real cause of death or suspect negligence with the incomplete medical reasons written… on this death certificate. The etiology of Mr. Matos' intestinal perforation, is not stated anywhere in the death certificate or can be infer[red] by just reading it. Simply put, perforated diverticula, as was clearly stated in his autopsy report, was Mr. Matos' real cause of death

---

[2] It is unclear which party has the burden of proof on this issue. In Skwira, the First Circuit observed that some "circuits view the FTCA's statute of limitations as an affirmative defense, rather than a jurisdictional prerequisite, and therefore place the burden of proof on the defendant." 344 F.3d at 71, n. 8. At the time, however, the First Circuit viewed "the statute of limitations as jurisdictional in nature, and, accordingly, place[d] the burden of proof on the plaintiff." Id. The legal basis for this rationale was upended by the recent decision in United States v. Kwai Fun Wong, where the Supreme Court held that "the FTCA's time bars are nonjurisdictional and subject to equitable tolling." 135 S. Ct. 1625, 1638 (2015). The logical reasons for placing the burden on the plaintiffs, however, are not necessarily affected by Kwai Fun Wong. See e.g., McCall ex rel. Estate of Bess v. United States, 310 F.3d 984, 987 (7th Cir. 2002) ("[T]he plaintiff [ ] has the burden of establishing an exception to the statute."). Indeed, it seems unreasonable to require the Government to prove a negative (i.e. that the plaintiff did not exercise reasonable diligence) to prevail on a statute of limitations defense. See Gould v. U.S. Dept. of Health & Human Svcs., 905 F.2d 738, 745-46 (4th Cir.1990) ("The burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable."). The First Circuit has not revisited this question after Kwai Fun Wong and the Court need not decide this now because the material facts of this case are, for the most part, undisputed. Even assuming that it fell upon the United States, the Government has adequately shown that Plaintiffs had knowledge of their injury and its cause at the time of Matos' death.

and was not revealed until the autopsy report findings became known by his family.

Moreover, in order to responsibly suspect that negligence was a factor in this medical incident, it was necessary to analyze all the medical records and see if a link between the doctors' acts and omissions and Mr. Matos' outcome existed. Should the diverticulitis was timely suspected, diagnosed and, thus, treated and acted upon by the physicians, he could have survived, as any other patient with this condition, even if perforation was promptly discovered. Hence, it is reasonable to conclude that claimants came into the knowledge of the existence of their right to sue when the reason that caused the perforation and Mr. Matos' death became known to them[.] [That] is, when they secured all the medical records and the autopsy report, not before. Although the injury (death) was known since it happened on March 1, 2010, the medical cause of Mr. Matos' death was not and could not be discoverable on the basis of the death certificate alone.

Docket # 234-7, pp. 3-4.

Plaintiffs argue that they lacked knowledge of Matos' "real" cause of death—which they characterize as "perforated diverticula"—until after they received the autopsy report. Moreover, through Dr. Pérez's affidavit, they suggest that the clock on their claims did not start until they suspected that medical negligence may have contributed to Matos' death. See Docket # 236, p. 20. Both of these contentions are flawed because they rely on incorrect notions of what constitutes "cause" or "knowledge of the cause of injury" for purposes of determining the start of the FTCA's limitations period.

To begin with, the concept of "cause" for purposes of the FTCA discovery rule in medical malpractice claims is not defined as "the immediate physical basis," Skwira, 344 F.3d at 78, or as the "precise medical reason for the injury." Kerstetter v. United States, 57 F.3d 362, 364 (4th Cir. 1995). Rather, as discussed below, knowledge of the cause of an injury refers to general knowledge of the medical treatment that may be related to the underlying injury. Thus, Plaintiffs' first argument—that they were

unaware of the "real" or "medical" cause of Matos' death until they received the autopsy report—is inapposite.[3]

Likewise, Kubrick squarely rejected the basis for Plaintiffs' second argument: that the start of the limitations clock should wait until a plaintiff "knows or should suspect that the doctor who caused his injury was legally blameworthy." Kubrick, 444 U.S. at 121-22. Adoption of such a rule "would go far to eliminate the statute of limitations as a defense separate from the denial of breach of duty." Id. at 125.

Indeed, the Supreme Court has "been at pains to explain that discovery of the injury, not discovery of the other elements of a claim (such as negligence), is what starts the clock." Rotella v. Wood, 528 U.S. 549, 555 (2000) (construing Kubrick) (internal parenthetical text added). Even in the context of medical malpractice, "where the cry for a discovery rule is loudest, [the Supreme Court has] been emphatic that the justification for a discovery rule does not extend beyond the injury." Id.

In enacting the FTCA Congress never intended that the "'accrual' of a claim [for statute of limitations purposes][4] must await awareness by the plaintiff that his injury was negligently inflicted." Id. at 123 (emphasis added). Not even suspicion of medical negligence is necessary to start the clock. See id. at 121-122. Instead, a plaintiff knowing the facts about the injury must seek advice in the medical community to determine whether the medical treatment conformed to the generally applicable standard of care. See id. at 123-124. "But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of

---

[3] Even if the Court were to apply the Ninth Circuit's "immediate physical cause" analysis, see Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir. 1984) ("The 'cause' is known when the immediate physical cause of the injury is discovered.")—which, as previously noted, was rejected in Skwira—Plaintiffs' argument would still fail on its merits. As both the death certificate and the autopsy report unequivocally state, Matos died because of septic shock secondary to peritonitis and intestinal perforation. The autopsy report added only that diverticulitis contributed to the intestinal perforation. Thus, the septic shock was the last incident in the chain of events that led to Matos' death, and is therefore the "immediate physical cause" of his death. Even by the standard articulated in Dyniewicz, the cause of death, for purpose of the discovery rule, cannot be something more remote (i.e. perforated diverticula) than the immediate cause of death (i.e. septic shock).

[4] See note 1.

limitations whether to sue or not, which is precisely the judgment that other tort claimants must make." Id. at 124.

Thus, in medical malpractice cases, knowledge of the cause of injury within the discovery rule refers to general knowledge of the medical treatment that may be related to the underlying injury, regardless of whether negligence was a factor. See Rotella, 258 U.S. at 556 ("A person suffering from inadequate treatment is thus responsible for determining within the limitations period then running whether the inadequacy was malpractice."); Dyniewicz v. United States, 742 F.2d 484, 487 (9th Cir. 1984) (the statute of limitations began to run "when plaintiff learned polio vaccine had caused his injury not when he discovered that HEW had negligently tested it") (construing Davis v. United States, 642 F.2d 328, 331 (9th Cir. 1981)). Accordingly, to the extent that Plaintiffs submitted Dr. Pérez's affidavit to support their erroneous argument that the clock did not start until they should have known the "real" or medical cause of their injury, "including if negligence was a factor that contributed or cause it," the affidavit is irrelevant.[5]

In Skwira v. United States, the First Circuit observed that while Kubrick clarified that knowledge of medical negligence is not necessary to start the clock, the

---

[5] It seems that Plaintiffs initially proceeded under the assumption that Puerto Rico law, instead of federal common law, governed the commencement of the statute of limitations under the FTCA. See Docket # 1, ¶ 6.1 (It was not until Plaintiffs received the certified copies of the medical records on July 28, 2010, that they "became aware of the cause of death and the possibilities of negligence as it[s] source thus, the possible existence of their cause of action under [Puerto Rico] law.") (Emphasis added). If that were the case, Dr. Pérez's affidavit may have been relevant. Under Puerto Rico law, the statute of limitations "does not begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit." Villarini-García v. Hosp. Del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993). That is, for the clock to begin, Puerto Rico law requires knowledge "not only of the harm but also the origin of the injury," including "knowledge of the wrong and a causal link between the wrong and some harm." Id.

Similarly, in Merck & Co. v. Reynolds, 559 U.S. 633 (2010), the Supreme Court distinguished the court-created discovery rule exception (such as the one in Kubrick) from the statutory discovery rule provided in 28 U.S.C.§ 1658(b)(1), for claims involving "fraud, deceit, manipulation or contrivance," in contravention of securities laws. In the former, the clock starts when a plaintiff is on "inquiry notice." That is, "the point where the facts would lead a reasonably diligent plaintiff to investigate further." Id. at 651. In the latter, like Puerto Rico law, the running begins once a plaintiff has discovered all of the facts that "constitute the violation," including the fact of scienter, "an important and necessary element" of a violation of § 10(b) of the Securities Exchange Act of 1934. Id. at 634.

question of "what knowledge short of actual knowledge of negligence provides a sufficient factual basis to trigger [the statute of limitations] under a discovery rule… has dodged federal courts ever since." 344 F.3d at 77. Construing Kubrick, the First Circuit stated that the FTCA's statute of limitations is triggered by "the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding if there is a basis for filing an administrative claim against the government." Id. at 78.

Applying this test, the limitations clock on Plaintiffs' wrongful-death action began to run on the date of their injury, that is on March 1, 2010—the date of Matos' death. See Skwira, 344 F.3d at 73 ("A cause of action for death is complete when death occurs.") (Parenthetically quoting Restatement (Second) of Torts § 899 cmt. c (1979)). By then, they knew that the treatment Matos had received at SIM had been ineffective. Indeed, they admit that after being discharged from SIM, Matos' symptoms did not improve. "He continued at home with abdominal pain throughout the night," for which the following morning he was taken to HURRA's emergency room. Docket # 1, ¶ 4.6. Plaintiffs also knew that Matos needed a surgery that was never performed because the HURRA medical staff asserted—although it later proved to be false—that they did not have an operating table that could accommodate Matos' weight. See Docket # 234-1, ¶ 7. But the clearest indication of Plaintiffs' knowledge of the cause of their injury is that, on March 1, 2010, they knew that Matos died within two days after he first sought medical treatment at SIM and while he was still receiving medical treatment at the Puerto Rico Medical Center for similar symptoms. By then, Plaintiffs had knowledge of their injury (Matos' suffering and premature death), and sufficient knowledge of its probable cause (unsuccessful treatment at SIM and other medical facilities) to trigger the statute of limitations.

Thus, as to Plaintiffs' wrongful-death action, the circumstances of this case do not warrant the application of the discovery rule. See Faura Cirino, 210 F. Supp. 2d at 52, (rejecting the application of the discovery rule where the patient died the same day

that he was taken to the emergency room). This is so because the factual basis of Plaintiffs' wrongful-death action was not "inherently unknowable at the time of the injury," González, 284 F.3d at 290, n. 9, as it may happen where a patient unexpectedly dies weeks or months after concluding medical treatment. It may be unreasonable for a plaintiff in that situation to suspect that the patient's death may be related to the medical treatment. Here, in contrast, Matos died while he was still receiving medical treatment at the Puerto Rico Medical Center. All of this happened within two days after the medical treatment he received at SIM and HURRA proved ineffective. Armed with the above-stated facts, Plaintiffs had to inquire among the medical community and determine within the two year statute of limitations—that is, on or before March 1, 2012—whether they had an actionable claim against the Government. See Kubrick 444 U.S. at 123-24; see also Rotella, 528 U.S. at 556.

The analysis of Z.M.M.'s inherited action for the suffering that her father endured shortly before his death[6] reaches the same result, albeit through a different path. Under the time-of-injury rule, the clock on the inherited action started to run on February 27, 2010, after Matos was discharged from SIM. The discovery rule, however, may have delayed the start of the limitations clock, at the latest, until March 1, 2010. By then, it had become clear that the medical treatment Matos received at the different hospitals had failed to alleviate his suffering or prevent his death.

Accordingly, the Court holds that the running of the FTCA's two-year statute of limitations for all of Plaintiffs' claims began on March 1, 2010. Since they filed their administrative claims on April 15, 2012—over a month after the statute of limitations expired—absent tolling of their claims on other grounds, Plaintiffs' action against the Government is time-barred.

---

[6] Under Puerto Rico law, an unlawful death gives rise to two causes of action. "[O]ne is the personal action of the original victim of the accident for the damages that the same suffered; and the other, the action which corresponds exclusively and by own right to the deceased's close relatives for the damages the death of their predecessor caused them." Cruz-Gascot v. HIMA-San Pablo Hosp. Bayamon, 728 F. Supp. 2d 14, 19 (D.P.R. 2010) (quoting Widow of Delgado v. Boston Ins. Co., 1 P.R. Offic. Trans. 823, 101 D.P.R. 598 (1973)).

### b. Equitable tolling cannot save Plaintiffs' claims

The Court's finding that the statute of limitations started at the time of death, does not necessarily mean that the limitations period would have inevitably expired on March 1, 2012. In certain circumstances, even when the clock has commenced to run, if sufficient information to file an administrative claim[7] "remains obscure in the face of a plaintiff's diligence in seeking to identify it," equitable tolling may serve to extend the filing deadline. Rotella, 528 U.S. at 561. Indeed, the Supreme Court recently resolved a circuit split and held that "the FTCA's time bars are nonjurisdictional and subject to equitable tolling." United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1638 (2015).

Equitable tolling serves to pause the running of a statute of limitations where a party "'has pursued his rights diligently but some extraordinary circumstance' prevents him from meeting a deadline." Kwai Fun Wong, 135 S. Ct. at 1631 (quoting Lozano v. Montoya Alvarez, 572 U.S. 1, —, 134 S.Ct. 1224, 1231–1232). "It differs from the [discovery rule] in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990).[8] While the discovery rule governs the time when the limitations period begins, "equitable tolling instead halts the running of the clock" in cases where the clock has started. Rakes, 442 F.3d at 24. Importantly, equitable tolling may be invoked only when the "extraordinary circumstances" remain in effect at the time of a deadline, or

---

[7] "[T]o file an administrative claim and preserve ones rights under the FTCA, one need only be in possession of 'sufficient information for the agency to investigate the claims.'" Skwira, 344 F.3d at 81 (quoting Santiago-Ramirez v. Sec'y of Dep't of Def., 984 F.2d 16, 19 (1st Cir. 1993)).

[8] See also Klehr v. A.O. Smith Corp., 521 U.S. 179, 192 (1997) (citing Cada for its description of the "difference among various discovery rules and doctrines of 'equitable tolling' and 'equitable estoppel'"); and United States v. Ibarra, 502 U.S. 1, 4, n. 2 (1991)(citing Cada for its discussion on principles of equitable tolling).

close enough, that they prevent the plaintiff "from meeting [that] deadline." Kwai Fun Wong, 135 S. Ct. at 1631.

Plaintiffs, however, explicitly waived any argument on equitable tolling grounds. See Docket # 242, ¶ 2 ("equitable tolling… is irrelevant to the instant case"). It is quite possible that Plaintiffs' waiver rests on their erroneous assumption that, under the discovery rule, the clock waits until a plaintiff has knowledge of all the necessary elements of the cause of action. But even if Plaintiffs had not waived this argument, they would not be entitled to equitable tolling on their claims against the United States.

The reason for this is obvious: Plaintiffs' delay in filing their administrative claims against the Government had nothing to do with them lacking sufficient information to file an administrative claim. Plaintiffs, in fact, filed a medical malpractice suit against SIM, HURRA and related defendants in local court comfortably within the FTCA's limitations period.[9]

Plaintiffs candidly admit that their delay in suing the United States was because they were unaware that SIM was deemed a covered federal entity under the Federally Supported Health Centers Assistance Act. See Docket # 236, pp. 21-22. But "in a medical malpractice case, knowledge of the federal status of the malpractitioner is irrelevant" for purposes of determining the start of the limitations clock. Skwira, 344 F.3d at 77, n. 14. Moreover, Plaintiffs fail to show that they exercised reasonable diligence in ascertaining this fact and reasonable diligence is a "sine qua non for equitable tolling." Sánchez v. United States, 740 F.3d 47, 55 (1st Cir. 2014), cert.

---

[9] The savings clause of the FTCA, which allows for the substitution of the United States as the party defendant in actions before state and federal courts, 28 U.S.C. § 2679(d)(5), cannot resurrect Plaintiffs' claim. This provision "excuses a plaintiffs' failure to exhaust administrative remedies" if (1) the state court action is filed within the FTCA's statute of limitations and (2) "the plaintiff presents the claim to the appropriate federal agency within sixty days after the dismissal of the state court action." González, 284 F.3d at 291, n. 11. As the Government correctly points out, the Westfall Act is inapplicable in this case because the United States was never substituted as a the party defendant in the state court action and neither did Plaintiffs file their administrative claims within six months from the date that case was dismissed. In any event, by failing to address this issue, Plaintiffs have waived any argument that their state court action somehow tolled the statute of limitations on their FTCA claims.

denied, 135 S. Ct. 54, 190 (2014) (quoting Donahue v. United States, 634 F.3d 615, 629 (1st Cir. 2011). Indeed, Plaintiffs presented no evidence that they "made any inquiry whatsoever as to the status of [SIM as a covered federal entity]." González, 284 F.3d at 291.[10] Neither did they show that the United States fraudulently concealed that SIM was a federally-funded hospital. See id. at 292 ("The doctrine of fraudulent concealment tolls the statute of limitations where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part.") (Citations and internal quotations omitted). Under these circumstances, principles of equitable tolling cannot save Plaintiffs' claims against the United States.

## IV. Conclusion

For the reasons stated, the Court holds that Plaintiffs' claims against the United States are time-barred by the FTCA's statute of limitations. The United States' motion for summary judgment is therefore **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of June, 2016.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

[10] Moreover, since the status of SIM as a covered entity under the Federally Supported Health Centers Assistance Act is a matter of public record, knowledge of this status is imputed to Plaintiffs' counsel. As the First Circuit stated in Sánchez: "It's not asking too much of the medical malpractice bar to be aware of the existence of federally funded health centers that can be sued for malpractice only under the Federal Tort Claims Act." 740 F.3d at 55 (quoting Arteaga v. United States, 711 F.3d 828, 834–35 (7th Cir. 2013)).